**In the United States District Court for the Eastern District of Pennsylvania**

| | |
|---|---|
| **CBRE, Inc.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   No. _____ |
| | ) |
| **Stobba Associates, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

### Complaint

Now comes Plaintiff CBRE, Inc. ("CBRE"), and files this Complaint against Defendant Stobba Associates, L.P. ("Stobba"), averring in support thereof as follows:

### *Introductory Statement*

1.  Stobba owes CBRE $263,598.10 in unpaid commercial lease commissions from CBRE's marketing of certain real property owned by Stobba.  CBRE's marketing efforts paid off for Stobba, as Stobba and a tenant entered into a multi-year commercial lease for the relevant property.  Since then, Stobba has been receiving monthly rental payments—for almost a full year—from the tenant under the lease.  Stobba has refused to pay to CBRE the full amount of the commissions owed to CBRE.  By this suit, CBRE seeks to recover the commissions Stobba owes to CBRE, plus all other relief permitted by law.

### *Parties*

2.  CBRE is a corporation organized and existing under the laws of the State of Delaware.

3.  CBRE's principal place of business is in Los Angeles, California.

4.  Stobba is a limited partnership organized and existing under the laws of the Commonwealth of Pennsylvania.

5. Stobba's principal place of business is 530 South Second Street, Suite 110, Philadelphia, Pennsylvania 19147.

*Jurisdiction and Venue*

6. This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332 because there is a complete diversity of citizenship among the parties and because the amount in controversy exceeds $75,000.

7. Venue properly lays in this Court under 28 U.S.C. § 1391 because (a) Stobba resides in this district and (b) a substantial part of the events or omissions giving rise to the claim occurred in this district.

*Facts*

*The Exclusive Lease Listing Agreement between CBRE and Stobba.*

8. In 2015, CBRE and Stobba entered into an Exclusive Lease Listing Agreement (the "Agreement") under which CBRE was to serve as the exclusive real-estate broker for certain real property located at Abbotts Square, Northwest Corner of Second & South Streets, Philadelphia, Pennsylvania (the "Property").

9. Particularly, the Agreement required CBRE "to use commercially reasonable efforts to effect a lease" of the Property and for the benefit of Stobba.

10. CBRE had "the exclusive right to negotiate a lease" of the Property from June 12, 2015 and ending at midnight on June 11, 2016 (the "Term").

11. In accordance with a Schedule of Sale and Lease Commissions (the "Schedule"), attached to the Agreement, Stobba agreed to pay CBRE a commission "if, during the Term: (a) the Property is leased to a tenant procured by [CBRE, Stobba,] or anyone else; (b) a tenant is procured by [CBRE, Stobba], or anyone else who is ready, willing and able to lease the Property

-2-

on the terms above stated, or any other terms agreeable to [Stobba]; (c) any contract for the lease of the Property is entered into by [Stobba]; or (d) [Stobba] removes the Property from the market."

12. The Schedule mandated that the commission payable to CBRE was "[f]ive percent (5%) of the base rent for the initial base term of a lease" (the "Total Commission").

13. CBRE's earned commission was to be paid by Stobba in two installments under the Schedule. The first installment totaled 50% of the Total Commission and was payable when a lease of the Property was executed by Stobba and a tenant of the Property.

14. The second installment of CBRE's earned commission totaled 50% of the Total Commission and was payable upon the earlier of: (a) the Property's tenant opening a store or (b) the Commencement Date, as defined by any lease entered into by Stobba and a tenant for the Property.

*Stobba enters into a lease for the Property.*

15. On or about April 21, 2016, Stobba signed a lease agreement (the "Lease") for the Property (the "Lease") with Fresh Formats, LLC ("Fresh"). A true and correct copy of the Lease is attached to this Complaint as Exhibit "A."

16. The Lease defines the "Commencement Date" to be "the date which is the earlier date of (i) the date Tenant opens for business to the Public, or (ii) the date which is one hundred twenty (120) days following the later of (a) Landlord's Tender of Possession, or (b) the issuance of a Building Permit for Tenant's Work." (Exh. A. § 2.2, at 4.)

17. Upon information and belief, Stobba tendered possession of the Property to Fresh in or around January 2017.

18. The Lease required Fresh, as the tenant, to pay to Stobba a minimum of $597,360.60 a year for the first five years of the lease and $657,031.80 a year for the second five years of the lease. (*Id.* § 3.1, at 6.)

19. The Lease requires Fresh to pay its rent to Stobba via monthly installments. (*Id.* § 3.2, at 6.)

20. The Lease specifically recognized that CBRE was the exclusive broker for the Property: "Tenant hereby represents and warrants to Landlord that Tenant has dealt with no broker in connection with this Lease except for CBRE/FAMECO ("Broker"), whose commission shall be paid by Landlord pursuant to a separate agreement between Landlord and Broker." (*Id.* § 16.16, at 30.)

21. Since the execution of the Lease, FAMECO merged into CBRE.

*The Total Commission is due to CBRE, but Stobba has paid only $50,000.*

22. Under the Agreement, the Total Commission is $313,598.10.

23. Half the amount of the Total Commission, or $156,799.05, was due to CBRE "upon execution of the Lease" (the "First Installment").

24. Stobba did not pay the First Installment of the Total Commission upon its and Fresh's execution of the Lease.

25. However, upon information and belief, Fresh has paid, and Stobba has received, monthly and timely rent payments since about February 2017.

26. In other words, the Commencement Date under the Lease has occurred, as evidenced by the fact that Fresh is paying Stobba monthly rent after Stobba tendered possession of the Property.

27. Thus, under the Agreement, the second half of the Total Commission, or $156,799.05, was due to CBRE (the "Second Installment") as of January 2017.

28. Stobba has never denied owing CBRE the Total Commission. To date, however, Stobba has paid CBRE only $50,000.00 of the Total Commission.

29. Stobba therefore owes CBRE $263,598.10 of the Total Commission (the "Outstanding Balance").

30. Stobba does not dispute that the Outstanding Balance is due and immediately owed to CBRE. To the contrary, Stobba has affirmed that it owes CBRE the Outstanding Balance.

31. Despite CBRE's repeated demands that Stobba immediately pay the Outstanding Balance to CBRE in accordance with the Agreement, Stobba has refused to do so.

### Count I:  Breach of Contract

32. CBRE incorporates paragraphs 1-31 of this Complaint.

33. A material term of the Agreement is that Stobba pay the Total Commission, via the First Installment and Second Installment, as each became due and owing.

34. CBRE has fully discharged its duties under the Agreement, including by marketing the Property and effecting a lease, which resulted in the Lease between Stobba and Fresh.

35. There are no outstanding conditions that must be satisfied, nor outstanding duties on CBRE's behalf that must be discharged, before CBRE is entitled to payment of the Total Commission.

36. Stobba has materially breached the Agreement by failing to pay CBRE the Outstanding Balance in a timely manner as mandated by the Agreement.

WHEREFORE, Plaintiff CBRE, Inc., respectfully requests the Court to enter judgment in its favor and against Defendant Stobba Associates, L.P., together with, and as permitted by law: (a) all damages incurred by CBRE, (b) pre-judgment and post-judgment interest, and (c) attorney's fees.

### Count II  Unjust Enrichment

37. CBRE incorporates paragraphs 1-36 of this Complaint and pleads this count in the alternative to Count I.

38. CBRE conferred a benefit on Stobba by marketing the Property, directly resulting in Stobba's execution of the Lease with Fresh.

39. Stobba accepted and appreciated the benefit conferred to it by CBRE, as Stobba has received monthly rental payments from Fresh as a direct result of CBRE's marketing of the Property.

40. Under the circumstances, it would be inequitable and unjust for Stobba to retain the value of the benefit conferred to Stobba by CBRE without Stobba paying CBRE for the value of the conferred benefit.

41. The value of the benefit conferred by CBRE to Stobba totals at least $263,598.10.

WHEREFORE, Plaintiff CBRE, Inc., respectfully requests the Court to enter judgment in its favor and against Defendant Stobba Associates, L.P., together with, and as permitted by law: (a) all damages incurred by CBRE, (b) pre-judgment and post-judgment interest, and (c) attorney's fees.

24009287.2 12/21/2017

-7-

                                                Respectfully Submitted,

Dated: December 22, 2017                */s/ Cory Winter*

James A. Keller (PA78955)
Saul Ewing Arnstein & Lehr LLP
1500 Market Street, 38th Floor
Philadelphia, Pennsylvania 19102
jkeller@saul.com – (215) 972-7785

Cory S. Winter (PA306552)
Saul Ewing Arnstein & Lehr LLP
2 North 2nd Street, 7th Floor
Harrisburg, Pennsylvania 17101
cwinter@saul.com – (717) 257-7562
*Attorneys for Plaintiff CBRE, Inc.*